Merrimack,
No. 4890.

LOUIS C. WYMAN, *Attorney General*

*v.*

HUGO DEGREGORY.

Argued December 6, 1960.
Decided March 20, 1961.

*Louis C. Wyman,* Attorney General (by brief and orally), *pro se.*

*James C. Cleveland* and *Howard S. Whiteside* (of Massachusetts) (*Mr. Whiteside* orally), for the defendant.

PER CURIAM. The resolution of the questions in this appeal has been held in abeyance following the oral argument awaiting receipt of certain opinions pending in the Supreme Court of the United States. Two of such opinions recently decided on February 27, 1961 are No. 37 *Wilkinson* v. *United States* and No. 54 *Braden* v. *United States.*

The defendant's committal for civil contempt for failure to answer the question "Are you presently a member of the Communist Party?" originates under the provisions of RSA 588:8-a (supp) (Laws 1957, *c.* 178, *s.* 2). The pertinent part of that statute reads as follows: "588:8-a. ATTORNEY GENERAL. At any time when the attorney general has *information which he deems reasonable or reliable relating to violations of the provisions of this chapter* he shall make full and complete investigation thereof and shall report to the general court the results of this investigation, together with his recommendations, if any, for legislation. In any investigation hereunder the attorney general or any duly authorized member of his staff is authorized to require by subpoena or otherwise the attendance of such witnesses and the production of such correspondence, books, papers and documents and to administer such oaths, and to take such testimony and to make such expenditures within the funds provided as he deems advisable . . . . " (Emphasis supplied).

It is the defendant's contention that the present statute no longer permits the Attorney General "to determine whether subversive persons . . . are presently located within this state" since that language which appeared in the previous legislation (Laws 1953, *c.* 307 and Laws 1955, *cc.* 197 and 340) does not appear in these words in RSA 588:8-a (supp) as enacted in 1957. It is argued that the Attorney General is now confined to investigating only "violations" of RSA ch. 588 and therefore there is no basis for investigating subversive persons or for the investigation of the defendant.

We think it is clear from the history of the legislation in this field in this state that that was not the intent of the Legislature and that it was not what the Legislature said. RSA 588:8-a (supp). This statute does not require that there must be a violation of law before the legislative investigation can be set in motion. It only requires that there be reasonable and reliable information "relating"

to violations of the provisions of RSA ch. 588. The statute specifically provides that the results of the investigation shall be reported to the Legislature together with the Attorney General's "recommendations, if any, for legislation." This clearly indicates that the Legislature has demanded a report as to whether further legislation in the field of subversive activities is required.

The definitions of a "subversive person" and a "subversive organization" in RSA 588:1 as supplemented by specific tests for determining what constitutes participation in a subversive organization by RSA 588:3-a (supp), Laws 1955, c. 181, indicate no purpose to discontinue the legislative investigation. *Wyman* v. *Uphaus,* 102 N. H. 461, 463. While it is true that the emphasis has been changed from an investigation of the location of subversive persons to those who have taken some active part as members or by participation in an alleged subversive organization (RSA 588:3-a (supp)), the purpose to continue the investigation is not in doubt. *Wyman* v. *Uphaus,* 102 N. H. 461, 463. See Sixth Report of N. H. Judicial Council, 43, 47 (1956) and particularly recommendation 5. Our decision in *Uphaus* v. *Wyman,* 102 N. H. 517, 518, did not say that legislation was limited to investigations of violations of law.

There are those who think that such a legislative investigation may be pointless, dangerous and ineffective (particularly on a state basis) and there are others who think it desirable and necessary. But the wisdom or lack of wisdom in authorizing and financing such an investigation still remains a matter for legislative rather than judicial determination. *Uphaus* v. *Wyman,* 81 S. Ct. 153 (1960); No. 54 *Braden* v. *United States,* and No. 37 *Wilkinson* v. *United States,* both decided February 27, 1961.

The evidence and the exhibits convinced the Trial Court, as they do this court, that the Attorney General had reasonable and reliable information relating to violations of RSA ch. 588, which provided a valid and relevant basis for the investigation of the defendant. The question that he was asked "Are you presently a member of the Communist Party?" is a pertinent one (*Barenblatt* v. *United States,* 360 U. S. 109, 125); there is no doubt that the defendant and his counsel understood it and that, in spite of divided opinions, it does not violate First Amendment rights. No. 54 *Braden* v. *United States,* No. 37 *Wilkinson* v. *United States, supra.*

The contention that such investigation violates the separation of powers of our Constitution (Const. Pt. I, *Art.* 37th) has already been decided adversely to the defendant in *Wyman* v. *Uphaus,* 102

N. H. 461. See *Nelson* v. *Wyman,* 99 N. H. 33. The proposition that the Superior Court had no authority under RSA 491:19, 20 to find the defendant in civil contempt because the legislative committee is not an "official or board" within the meaning of that statute is without merit. *State* v. *Matthews,* 37 N. H. 450, 453. See *Wyman* v. *Uphaus,* 102 N. H. 461.

Under the majority opinions of the Supreme Court of the United States and under the decisions of this court we can find no constitutional infirmity in the order of civil contempt issued by the Trial Court.

*Exceptions overruled.*

WHEELER, J., did not sit; DUNCAN, J., dissented.

DUNCAN, J., *dissenting:* The proceedings now before the court are distinct from those considered in *Wyman* v. *DeGregory,* 100 N. H. 163 and 101 N. H. 171, having been instituted under a more recent statute. Laws 1957, c. 178, s. 2. See *Wyman* v. *DeGregory,* 102 N. H. 564. Ostensibly the 1957 statute was enacted to provide the Attorney General with some semblance of permanent authority, in place of the temporary investigatory powers conferred upon him as a legislative committee by earlier acts and resolutions. Laws 1953, c. 307; Laws 1955, cc. 197, 340. The bald fact is that in revising the statute the Legislature struck out the earlier direction "to determine whether subversive persons . . . are presently located within this state" (Laws 1953, c. 307, *supra*) upon which the validity of the prior investigation depended under the decisions. See *Nelson* v. *Wyman,* 99 N. H. 33, 38, 39; *Wyman* v. *Sweezy,* 100 N. H. 103, 110, 113; *Wyman* v. *Uphaus,* 100 N. H. 436, 441, 450; *Sweezy* v. *New Hampshire,* 354 U. S. 234, 236, 246; *Uphaus* v. *Wyman,* 360 U. S. 72; *Uphaus* v. *Wyman,* 81 S. Ct. 153, 154, 158 (1960).

The Attorney General is now charged solely with the duty of making investigation of "violations" of the provisions of the subversive activities act (Laws 1957, c. 178, s. 2, *supra*) a function which the same act likewise specifically entrusted to grand juries. Laws 1957, c. 178, s. 1. See RSA 588:2, 8-a (supp). I cannot avoid the conclusion that this change has substantially altered the whole character of the investigation in a way which renders the present investigation vulnerable under provisions of the Con-

stitutions of New Hampshire and of the United States, more especially since the 1955 Report on Subversive Activities by the Attorney General to the General Court (*pp.* 9, 61, 204) makes it plain that he regards this defendant as a probable violator of the law. In view of the interpretation placed upon the 1957 act by the majority of the court, an exposition of my views with respect to the constitutional issues would be superfluous.